■ In the Matter of ADAM J. GOOD, Petitioner, v. WILLIAM S. HULTS, as Commissioner of Motor Vehicles, Respondent.— The petitioner, in an article 78 proceeding, seeks a review of the determination of the Commissioner of Motor Vehicles which revoked his license to operate an automobile. It is

claimed that there is no substantial evidence to sustain the decision. The accident happened on March 18, 1961 at 4:00 A.M., on Routes 4 and 40 in the Town of North Greenbush on a two-lane road with a double dividing solid line. The weather was clear and the road dry. The petitioner, who delivered newspapers along the route, after observing that there were no lights of any approaching automobiles, crossed the white lines to the west shoulder of the road to a mailbox for the purpose of making a delivery. His automobile was facing north with the headlights on high beam and the right wheels on the travelled portion of the road. An automobile traveling southerly on the west side of the road collided with the parked automobile of the petitioner. The operator of this automobile, according to his own testimony, spent from 5:30 P.M., until approximately 1:00 A.M., visiting grills and restaurants, and aside from stating that he stayed in his automobile for a time, gives no further accounting of his activities until the time of the accident, approximately 4:00 A.M. He mistakenly places the time of the accident at 2:30 A.M. A passenger in petitioner's automobile estimated that the knoll, over which the other vehicle came, was 175–200 yards north of the automobile of the petitioner. The operator of this vehicle coming south stated that he could see ahead for 100 yards or more and it was his opinion that the automobile of the petitioner was moving at the time of the accident. The order of revocation gave the cause therefor: " Violation of Section 1126 (a) of the Vehicle and Traffic Law — crossing double lines and operation of a motor vehicle in a manner showing a reckless disregard for life and property of others ". Subdivision (a) of section 1126 reads: " § 1126. No-passing zones. (a) When official markings are in place indicating those portions of any highway where overtaking and passing or driving to the left of the roadway would be especially hazardous, no driver of a vehicle proceeding along such highway shall at any time drive on the left side of any pavement markings designed to indicate those portions of any highway where overtaking and passing or driving to the left of the roadway would be especially hazardous." There are exceptions to the foregoing limitations not applicable here. This section is contained within article 25 of the Vehicle and Traffic Law captioned " Driving on Right Side of Roadway, Overtaking and Passing, etc." It might be spelled out that the petitioner violated this section when he crossed to the left side of the road for the purpose of stopping and parked with his automobile partly on the road although the section itself is headed " No-passing zones ". We are unable, in any event, to agree that what the petitioner did constituted gross negligence and this is particularly true when the record is abundantly clear that the cause of the accident was the method of operation of the approaching automobile, the operator of which testified that he had a clear and unobstructed view of the petitioner's automobile for 100 yards (300 feet) or more. The petitioner crossed the double white lines in a no-passing zone at 4 o'clock in the morning with no visible approaching traffic. A finding of gross negligence permits but does not mandate revocation. (Vehicle and Traffic Law, § 510, subd. 3, par [e].) We determine, under the circumstances, that the penalty was too severe and the order of revocation was an abuse of discretion. Determination modified by directing that the license of the petitioner be suspended for a period of 60 days and, as so modified, confirmed. Herlihy, Reynolds and Aulisi, JJ., concur; Gibson, P. J., and Taylor, J., dissent and vote to confirm in the following memorandum by Gibson, P. J.: The Commissioner's order of revocation was on two grounds: (1) For violation of the statute prohibiting driving " on the left side of any pavement markings designed to indicate those portions of any

highway where overtaking and passing or driving to the left of the roadway would be especially hazardous" (Vehicle and Traffic Law, § 1126, subd. [a]); and (2) for "operation of a motor vehicle * * * in a manner showing a reckless disregard for life and property of others" (Vehicle and Traffic Law, § 510, subd. 3, par. [e]); revocation being permissive in the case of each violation (Vehicle and Traffic Law, § 510, subd. 3, par. [a]). The majority memorandum does not dispute the Commissioner's finding that petitioner crossed double white lines, in violation of subdivision (a) of section 1126; and seems to concede that he failed to adjust the beam of his dazzling lights, in violation of subdivision 3 of section 375. As the Commissioner had a right to direct revocation for either or both of the conceded violations, the correctness of the decision about to be rendered depends on (1) whether, in imposing revocation, the Commissioner "abused his discretion" (Civ. Prac. Act, § 1296, subd. 5-a, now CPLR 7803, subd. 3) as the majority holds; and (2) if, in fact, his imposition of that punishment for the conceded violations constituted an abuse of discretion, whether his additional finding of gross negligence was supported by substantial evidence and was such as to warrant revocation. In my view, the punishment, even upon the facts recited in the majority memorandum, was not so "shocking" as to warrant our interference (*Matter of Stolz* v. *Board of Regents of Univ. of State of N. Y.*, 4 A D 2d 361 [HALPERN, J.]) and hence was not arbitrary, tested by that or any other recognized standard. However, and in any event, the finding of gross negligence seems to me to be supported by substantial evidence and to permit of revocation by the Commissioner, in the reasonable exercise of his discretion. "Where casual, or slight negligence ends, and gross negligence begins may be difficult to determine, but essentially the issue is predominantly one of fact and not of law. Where there is room for the trier of the facts to draw different conclusions certainly the issue is one of fact." (*Matter of Kelley* v. *Kelly*, 5 A D 913, 914.) I do not believe that it can fairly be held, as a matter of law, that no substantial evidence of "reckless disregard" or gross negligence is to be found in the cumulative negligence demonstrated by petitioner's conduct, in that he crossed double white lines in utter disobedience of an especially essential and necessarily rigid statute; that then, and while recognizing his position of peril, as evidenced by his conversation with his passenger, he stopped his car so as to obstruct lawful travel in the southbound lane; that he did nothing to adjust his high-beam lights, projected ahead in the very lane reserved for oncoming vehicles, this on a dark, unlighted, two-lane highway, with visibility obstructed by the knoll ahead, "sufficiently high to hide an oncoming car", as he testified, and but 150 to 225 feet away, as his passenger testified — a distance traversable in two or three seconds by a car proceeding at legal speed; that while in a place indicated by the pavement markers to be "especially hazardous" and described by his companion as "a tricky situation", and while thus obstructing the lane in which he had no right to be, with dazzling lights focused in the face of approaching traffic, he thereupon deprived himself of his last opportunity to react to active danger in the emergency of his own creating by partially alighting from the car and turning his attention away from the highway ahead, so that when, in his own words, his passenger "yelled" and he "finally did look up", it was, as he said, "too late", and "there wasn't anything I could do". It seems clear that petitioner's operation was "in a manner which unreasonably interfere[d] with the free and proper use of the public highway", this, of course, being reckless driving (Vehicle and Traffic Law, § 1190) which "means the

same as gross negligence or a reckless disregard for life or property of others (§ 510)." (*Matter of Coniber* v. *Hults,* 15 A D 2d 252, 256; *Matter of Jenson* v. *Fletcher,* 277 App. Div. 454, 458, affd. 303 N. Y. 639; *Matter of Hart* v. *Mealey,* 287 N. Y. 39, 42.) The majority view that the degree of petitioner's negligence was in some way mitigated by the conclusion that the other driver's method of operation was "the cause of the accident" seems to me mistaken. A similar contention was urged and rejected in *Matter of Karp* v. *Hults* (12 A D 2d 718, 719, affd. 9 N Y 2d 857) in which we said: "Petitioner also argues forcefully that the negligence of the tractor operator was such as to relieve petitioner, at least from the charge of 'reckless disregard for life or property'; but, of course, we may not assay comparative negligence nor may we apply contributory negligence as a bar. The inquiry was not directed to responsibility for the accident but to the manner of petitioner's operation. It is entirely conceivable that all the operators involved in an accident may be guilty of such highly reckless conduct as to constitute gross negligence in extreme degree on the part of each." The findings are supported by substantial evidence which the Commissioner was empowered to credit; and the punishment imposed evinces no abuse of discretion on his part. Consequently, I would confirm the determination.